# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, TELLITOCCI, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class KODY D. SCHENK**
**United States Army, Appellant**

ARMY 20120122

Headquarters, 82nd Airborne Division
Reynold P. Masterton, Military Judge
Colonel Lorianne M. Campanella, Staff Judge Advocate (pretrial advice and recommendation)
Lieutenant Colonel John N. Ohlweiler, Staff Judge Advocate (addendum)

For Appellant: Major Jacob D. Bashore, JA; Captain Brian J. Sullivan, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Rachel T. Brant, JA (on brief).

31 July 2014

---------------------------------
SUMMARY DISPOSITION
---------------------------------

HAIGHT, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of conspiracy to malinger, willful destruction of military property, wrongful use of hashish, malingering by feigning injury, and reckless endangerment, in violation of Articles 81, 108, 112a, 115, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 908, 912a, 915, and 934 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to the grade of E-1. Pursuant to a pretrial agreement, the convening authority approved only so much of

the sentence as provided for a bad-conduct discharge, confinement for thirty-nine months[1], forfeiture of all pay and allowances, and reduction to the grade of E-1.

This case is before us pursuant to Article 66, UCMJ. Appellant raises one assignment of error, which merits discussion but no relief.

*Background*

Appellant deployed to Afghanistan in March of 2011, where he served as an infantryman for Combined Task Force Spartan, operating from Forward Operating Base (FOB) Pasab. During the spring of 2011, appellant began to use hashish on a regular basis, and he frequently smoked the drug with another soldier in his unit, Specialist (SPC) Korey Huff. Other soldiers in appellant's unit discovered marijuana in his living area inside a tent. Specialist Huff had also been "found with drugs." Fearing the potential fallout from their misconduct, they discussed how they could possibly "get out of trouble for drug use." Specialist Huff initially proposed that they detonate a grenade inside FOB Pasab, injure themselves, and presumably avoid more severe negative consequences for their illicit drug use. Appellant agreed to a modified plan of detonating a grenade while on patrol off the FOB and then feigning injury. Then, within an hour of this agreement, while still on FOB Pasab, SPC Huff decided to accelerate the scheme, announced "I am doing this now," pulled the safety clip and pin from a grenade, but became squeamish and told appellant "I cannot do this," and handed the grenade to appellant with the safety spoon still attached.

Appellant dropped the grenade in a clearing next to his platoon's command post and adjacent to a walkway and sought cover behind a concrete barrier with SPC Huff. After detonation, appellant dropped to the ground and feigned concussive injuries to include unconsciousness and hearing loss. Appellant fully and freely admitted that although SPC Huff may have deviated from some of the specifics of the agreed upon plan, appellant had already conspired to detonate a grenade and then malinger. Appellant further admitted he never withdrew from that conspiracy and he willfully chose to commit the charged overt act of throwing the grenade although he could have re-secured the explosive.

The ensuing investigation and forensic analysis of evidence found at the blast site, along with the suspicious and inconsistent nature of their purported injuries all

---

[1] A pretrial agreement limited appellant's sentence to confinement to forty months. However, in his addendum, the staff judge advocate recommended the convening authority approve only thirty-nine months of confinement because he "recognize[d] that post-trial processing could be an issue."

pointed to appellant and SPC Huff as being the culprits responsible for the explosion. Ultimately, both soldiers were charged with various offenses related to their misconduct, including wrongful use of hashish, willful destruction of military property (the grenade), conspiracy to commit malingering, and malingering. Specialist Huff was also charged with the additional drug crimes of distribution of hashish and possession of heroin. Whereas appellant pleaded guilty to and was convicted of both his use of hashish as well as his crimes surrounding the detonation of the grenade and his feigned injury, SPC Huff only pleaded guilty to and was convicted of his drug-related crimes with the government moving to dismiss all of his crimes surrounding his conspiracy with the appellant.[2]

Specialist Huff went to trial and was sentenced on 11 January 2012 for his drug-related crimes to reduction to a bad-conduct discharge, confinement for three years, and reduction to the grade of E-1.[3] The next day, on 12 January 2012, appellant entered into a pretrial agreement with the convening authority, wherein appellant agreed to plead guilty to all of his crimes involving the grenade detonation and malingering along with his drug-related crime in exchange for a confinement cap of forty months. At trial, on 2 February 2012, appellant was sentenced to a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

Appellant now claims his approved sentence of confinement for thirty-nine months and a bad-conduct discharge is disproportionately severe when compared to the punishment received by SPC Huff.

*Law and Discussion*

This court may "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." UCMJ art. 66(c). "Article 66(c)'s sentence appropriateness provision is a sweeping Congressional mandate to ensure a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (internal quotation marks omitted). The Court of

---

[2] In SPC Huff's case, pursuant to a government motion, the military judge dismissed one specification of conspiracy to commit malingering, one specification of willful destruction of military property (the grenade), one specification of malingering, one specification of reckless endangerment, and one specification of self-injury without intent to avoid service.

[3] In SPC Huff's case, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for eighteen months, and reduction to the grade of E-1.

Appeals for the Armed Forces (CAAF) has stressed the importance of this court's role in evaluating sentence appropriateness to ensure "uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001). We make such determinations in light of the character of the offender, the nature and seriousness of his offenses, and the entire record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citing *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 106-07, 27 C.M.R. 176, 180-81 (1959)). We are not required to "engage in sentence comparison with specific cases 'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)).

At this court, appellant bears the burden of demonstrating that SPC Huff's case is "closely related" to his case and that their sentences are "highly disparate." *Lacy*, 50 M.J. at 288. If successful, "then the [g]overnment must show that there is a rational basis for the disparity." *Id.*; *see also United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001). At first blush, what appellant asks this court to do is a fairly routine comparison between what would seem like closely related cases. However, under the circumstances found here, the required analysis is more nuanced than a simple comparison between the adjudged sentences of two co-actors convicted of similar or related crimes.

What may have started out as closely related cases, did not end up that way. The sentence adjudged against SPC Huff was solely for his drug-related crimes. In contrast, the gravamen of appellant's misconduct for which he was convicted and punished was his conspiracy to malinger and effort to accomplish such by recklessly and dangerously detonating a grenade. Here, comparison of sentences rendered for such vastly different behavior is neither required nor prudent.

Instead, the true crux of appellant's complaint is that the government chose to dismiss certain offenses in SPC Huff's case, but declined to do the same in appellant's case where appellant specifically agreed to plead guilty to those same offenses. Simply put, this is more a comparison of negotiated dispositions than of adjudged sentences. *See United States v. Noble*, 50 M.J. 293, 294-95 (C.A.A.F. 1999).

However, appellant has not claimed unlawful, invidious, or impermissible discrimination by the convening authority. *See Durant*, 55 M.J. 258 at 261. Convening authorities have "broad discretion" in determining whom to prosecute and for what crimes. *See Ball v. United States*, 470 U.S. 856, 859 (1985); *United States v. Brown,* 40 M.J. 625, 629 (N.M.C.M.R. 1994); *United States v. Kelly,* 40 M.J. 558, 570 (N.M.C.M.R. 1994). Unless presented with evidence to the contrary,

this court presumes convening authorities act without bias. To raise the issue of selective or discriminatory prosecution:

> [An appellant] bears the heavy burden of establishing, at least *prima facie*: (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the Government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*United States v. Garwood,* 20 M.J. 148, 154 (C.M.A. 1985) (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)). An appellant must show more than a mere possibility of selective prosecution; he must show discriminatory intent. *See United States v. Brown,* 41 M.J. 504, 511 (Army Ct. Crim. App. 1994). Absent this showing, here we find no abuse of governmental discretion or illegal discrimination.

Finally, pursuant to Article 66, UCMJ, we turn to the issue of whether appellant's sentence is appropriate. In light of the "character of [appellant], the nature and seriousness of his offenses, and the entire record of trial," we find his sentence appropriate. *United States v. Pleasant*, 71 M.J. 709, 718 (Army Ct. Crim. App. 2012).

*Conclusion*

On consideration of the entire record and the submissions of the parties, the findings of guilty and the sentence are AFFIRMED.

Senior Judge COOK and Judge TELLITOCCI concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court